# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

ELG, a minor by Parent and Next Friend Latoreya Till

Plaintiff

and

LATOREYA TILL, as Conservator for the Estate of ELG for the current Plaintiff

Plaintiff-Appellee/Cross-Appellant

v.

KENNETH J. KING, Judge

Defendant-Appellant/Cross-Appellee

JOHN DOE, Court Officers; JANE ROE, Court Officer; KEITH TAYLOR

Defendants [25-1558, 25-1614]

and

UNIVERSAL PROTECTION SERVICE, LLC, dba Allied Universal Security
Services, dba Allied Universal Security Services, LLC;
CATHY R. GREER-FORTE

Defendants-Appellees [25-1614]

---

Appeal from the United States District Court
Eastern District of Michigan
Case No. 2:24-cv-12195

---

## PLAINTIFF-APPELLEE/CROSS-APPELLANT'S BRIEF ON APPEAL
## [SECOND BRIEF]

**\*\*\* ORAL ARGUMENT REQUESTED \*\*\***

**CERTIFICATE OF COMPLIANCE/CERTIFICATE OF SERVICE**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Fieger, Fieger, Kenney & Harrington, P.C.

Robert G. Kamenec (P35283)
Gary N. Felty, Jr. (P55554)
Attorneys for Plaintiff-Appellee/Cross-Appellant Latoreya Till, as Conservator for the Estate of ELG for the current Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555; (248) 233-3560 (f)
(313) 268-9875 (cell)
r.kamenec@fiegerlaw.com

# CORPORATE DISCLOSURE

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellee/Cross-Appellant Latoreya Till makes the following disclosures:

1.      Are any of said Parties a subsidiary or affiliate of a publicly owned corporation?

        No.

2.      Is there a publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome?

        No.

/s/ Robert G. Kamenec
Robert G. Kamenec

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE ..................................................................1

TABLE OF CONTENTS......................................................................i

INDEX OF AUTHORITIES................................................................ iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... vii

JURISDICTIONAL STATEMENT ....................................................... viii

STATEMENT OF THE ISSUES PRESENTED........................................ix

STATEMENT OF THE CASE.............................................................1

    A. Introduction. ...................................................................1

    B. Material facts. ................................................................1

    C. Material proceedings. .......................................................5

    D. The district court's decision. ...............................................8

    1. Defendant King's actions were non-judicial in nature and in function (appeal). .........................................................8

    2. Defendant King did not act in complete absence of jurisdiction (cross-appeal). ...............................................................9

STANDARD OF REVIEW ...............................................................11

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT I............................................................................14

    THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF'S FIRST AMENDED COMPLAINT INCLUDES FACTUAL ALLEGATIONS WHICH ESTABLISH THAT DEFENDANT KING WAS NOT PERFORMING A JUDICIAL ACT WHEN HE ACTED ABUSIVELY TOWARD ELG, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE. ...................14

    A. Introduction. .................................................................14

    B. The law of judicial immunity. .............................................16

    C. Argument. ....................................................................22

    1. Defendant King has forfeited his argument on appeal...........................22

2. Defendant King carries the burden of establishing judicial immunity. ..................................................................................24

3. Plaintiff did – but was not required to – plead the absence of absolute immunity. ......................................................................24

4. Plaintiff has sued Defendant King in his individual capacity. ................26

5. Plaintiff has alleged factual allegations that under the nature and function of the act test, Defendant King was not performing a judicial function, but rather was engaged in extrajudicial conduct. .......28

D. Conclusion. ..................................................................................31

ARGUMENT II ..............................................................................................33

THE DISTRICT COURT ERRED WHEN REJECTING PLAINTIFF'S ARGUMENT THAT THERE IS A "COMPLETE ABSENCE OF ALL JURISDICTION" OVER PLAINTIFF'S FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE. ......................................................33

CONCLUSION ..............................................................................................39

CERTIFICATE OF COMPLIANCE .................................................................1

CERTIFICATE OF SERVICE ..........................................................................1

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ................1

**Page**

**MICHIGAN CASES**

*In Re: Contempt of Warriner,*
113 Mich. App. 549; 317 N.W.2d 681 (1982) ........................................................37

**FEDERAL CASES**

*Antoine v. Byers & Anderson,*
508 U.S. 429 (1993) ........................................................11

*Archie v. Lanier,*
95 F.3d 438 (6th Cir. 1996) ........................................................ 24, 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................11

*Ashford v. Univ. of Mich.,*
89 F.4th 960 (6th Cir. 2024) ........................................................23

*Barnes v. Winchell,*
105 F.3d 1111 (6th Cir. 1997). ........................................................ viii, 11

*Barrett v. Harrington,*
130 F.3d 246 (6th Cir. 1997) ........................................................30

*Bradley v. Fisher,*
80 U.S. (13 Wall.) 335 (1871) ........................................................ 16, 18, 35

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) ........................................................ 21, 22, 28

*Burns v. Reed,*
500 U.S. 478 (1991) ........................................................24

*Cameron v. Seitz,*
38 F.3d 264 (6th Cir. 1994) ........................................................32

*Forrester v. White,*
484 U.S. 219 (1988) ........................................................ 19, 20

*Franklin American Mtg. Co. v. University Nat'l Bank*,
910 F.3d 270 (6th Cir. 2018) ...........................................................................25

*Harper v. Merckle*,
638 F.2d 848 (5th Cir. 1981) ................................................................... 31, 35

*Harris v. Harvey*,
605 F.2d 330 (6th Cir. 1979) ...........................................................................31

*Hughes v. Duncan*,
93 F.4th 374 (6th Cir. 2024) ...........................................................................26

*Johnson v. Turner*,
125 F.3d 324 (6th Cir. 1997) ...........................................................................35

*Jones v. Brock*,
549 U.S. 199 (2007) ...........................................................................25

*Kentucky v. Graham,*
473 U.S. 159 (1985) ...........................................................................27

*King v. McCree*,
573 F.App'x. 430 (6th Cir. 2014) ...........................................................................28

*Mireles v. Waco*,
502 U.S. 9 (1991) ................................................................... 20, 21, 33

*Mitchell v. Forsyth*,
472 U.S. 511 (1995) ................................................................... viii

*Morrison v. Lipscomb*,
877 F.2d 463 (6th Cir. 1989) ...........................................................................32

*Peatross v. City of Memphis, Tenn.*,
818 F.3d 233 (6th Cir. 2016) ...........................................................................27

*Pierson v. Ray*,
386 U.S. 547 (1967) ...........................................................................17

*Pusey v. City of Youngstown,*
11 F.3d 652 (6th Cir.1993) ...........................................................................27

*Rieves v. Town of Smyrna, Tenn.*,
959 F.3d 678 (6th Cir. 2020) ...................................................................................24

*Rockett v. Eighmy*,
71 F.4[th] 665 (8th Cir. 2023) ..................................................................................16

*Scott v. First S. Nat'l Bank*,
936 F.3d 509 (6th Cir. 2019) ...................................................................................23

*Sheets v. Mullins*,
287 F.3d 581 (6th Cir. 2002) ...................................................................................25

*Stump v. Sparkman*,
435 U.S. 349 (1978) ..................................................................... 18, 19, 28, 29, 33

*Waters v. City of Morristown, TN*,
242 F.3d 353 (6th Cir. 2001) ...................................................................................27

*Williams v. U.S. Att'y. Gen.*,
932 F.3d 819 (6th Cir. 2020) ...................................................................................11

*Zarcone v. Perry*,
572 F.2d 52 (2nd Cir. 1978) .....................................................................................38

**OUT-OF-STATE CASES**

*Floyd v. Barker*,
77 Eng. Rep. 1305 (Star Chamber 1607) ..................................................................16

**RULES**

Fed.R.App.P. 28(a) ...................................................................................................23

Fed.R.App.P. 4(a)(1)(A) ......................................................................................... viii

Fed.R.Civ.P. 12(b)(6).............................................................. 6, 11, 16, 22, 25, 26

Sixth Cir. R. 34(a) .................................................................................................. vii

**STATUTES**

42 U.S.C. §1983 ..................................................................................... 5, 26, 27

42 U.S.C. §1997e .....................................................................................................25

M.C.L. 600.1701 .......................................................................................... 10, 36

M.C.L. 600.1701(a).............................................................................................36

M.C.L. 600.1711(1) ............................................................................................36

## **OTHER AUTHORITY**

Brennan in Harvard Law School Occasional Pamphlet No. 9,
22-23 (1967) ................................................................................................ vii

Ginsburg, *Address to the Dinner of American Law Institute*, 58
(5/19/94) ...................................................................................................... vii

Merritt, *Judges on Judging:  The Decision-Making Process in
Federal Courts of Appeal*, 51 Ohio St. L.J. 1385 (1991).................................... vii

Robert L. Stern, Supreme Court Practice (2002)...................................................... vii

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

As provided in Sixth Circuit Rule 34(a), Plaintiff-Appellee/Cross-Appellant Latoreya Till, as Conservator for the Estate of ELG for the current Plaintiff ("Plaintiff") requests this Court docket this appeal for oral argument. Justice Brennan once said that "oral argument is the absolutely indispensable ingredient of appellate advocacy. . . . [O]ften my whole notion of what a case is about crystallizes at oral argument." Robert L. Stern, Supreme Court Practice, p. 671 (2002) quoting Brennan in Harvard Law School Occasional Pamphlet No. 9, 22-23 (1967). Justice Ginsburg has likewise explained that oral argument gives counsel "notice and a last clear chance to convince the Court concerning points on which the decision may turn." *Id.*, quoting Ginsburg, *Address to the Dinner of American Law Institute*, 58 (5/19/94). Sixth Circuit Senior Judge Gilbert S. Merritt likewise recognized that the core of the adversary process is oral argument, a tradition which provides a "hedge against misdiagnosis and misperformance in the brief, the one last chance of locating a postern missed in the advance survey." Merritt, *Judges on Judging: The Decision-Making Process in Federal Courts of Appeal*, 51 Ohio St. L.J. 1385, 1386-1387 (1991).

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee/Cross-Appellant appeals from the district court's Opinion and Order which rejected an alternative ground to deny the Motion to Dismiss filed by Defendant King entered on May 22, 2025. R.E.51, Opinion and Order, PageID.594. Pursuant to Fed.R.App.P. 4(a)(1)(A), Defendant-Appellant/Cross-Appellee Kenneth King's Notice of Appeal was filed within 30 days of entry of the Opinion and Order, on June 18, 2025. R.E.52, Notice of Appeal, PageID.595. Plaintiff's Notice of Appeal was timely filed within 14 days of the filing of King's Notice of Appeal, namely on July 1, 2025. R.E.62, Notice of Appeal, PageID.655-676.

This Court's jurisdiction to review this interlocutory appeal is based on the principal that a district court's denial of a claim of immunity, to the extent that it turns on an issue of law, is immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1995). See also *Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997). Specifically, the Supreme Court has stated that "the denial of a substantial claim of absolute immunity is an order appealable before judgment, for the essence of absolute immunity is the possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 472 U.S. at 525.

# STATEMENT OF THE ISSUES PRESENTED

## *Appeal*

I.  WHETHER THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF'S FIRST AMENDED COMPLAINT INCLUDES FACTUAL ALLEGATIONS WHICH ESTABLISH THAT DEFENDANT KING WAS NOT PERFORMING A JUDICIAL ACT WHEN HE ACTED ABUSIVELY TOWARD ELG, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE?

Plaintiff-Appellee says "yes."

Defendant-Appellant says "no."

The District Court says "yes."

## *Cross-Appeal*

II.  WHETHER THE DISTRICT COURT ERRED WHEN REJECTING PLAINTIFF'S ARGUMENT THAT THERE IS A "COMPLETE ABSENCE OF ALL JURISDICTION" OVER PLAINTIFF'S FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE?

Plaintiff/Cross-Appellant says "yes."

Defendant/Cross-Appellee says "no."

The District Court says "no."

**STATEMENT OF THE CASE**

**A. Introduction.**

On appeal, Defendant King has not challenged any of the district court's use and/or description of the factual allegations in Plaintiff's First Amended Complaint ("FAC"). Accordingly, Plaintiff adopts the district court's recitation of the factual allegations together with some further detail taken from the FAC, with both the paragraphs references and the Page.ID references from the FAC.

**B. Material facts.[1]**

Plaintiff ELG is a minor represented by her mother, Latoreya Till. On August 13, 2024, ELG visited Michigan's 36th District Court (Detroit) as part of a

---

[1] When Defendant King's Motion to Dismiss was filed on October 21, 2024, Plaintiff's original Complaint was in effect. *See* R.E.1, Complaint, PageID.1-56 and R.E.17, Motion to Dismiss in Lieu of Answer on behalf of Kenneth King, PageID.136-150. So too, Plaintiff's Response to the Motion to Dismiss was filed while the original Complaint was in effect, the Response dated November 11, 2024. R.E.25, Response, PageID.222-255. Plaintiff's Amended Complaint was filed on December 30, 2024. R.E.30, FAC, PageID.293-346. As explained during the hearing on the Motion to Dismiss, February 19, 2025, the FAC simply named the John Doe Defendants. The parties through their attorneys and the district court agreed that the Motion to Dismiss would be considered in light of the allegations of the FAC. R.E.56, Tr 2/19/25, pp. 7-8, PageID.606-607.

Accordingly, the district court's Opinion and Order denying the Motion to Dismiss by Defendant King refers to the allegations in the FAC. *See e.g.,* R.E.51, PageID.577-579. Thus, on appeal and cross-appeal, Plaintiff refers to the allegations in the FAC. Unfortunately, Defendant King makes no references to the record in his Appellate Brief, Doc 31, all the while challenging the district court's Opinion and Order which cites extensively to the FAC.

summer vocational program organized by a local nonprofit agency. R.E.30, First Amended Complaint, ¶¶16-20, PageID.299. The lecturer was Defendant Judge Kenneth King. *Id.*, ¶21, PageID.299. When the group arrived at the court, they were seated in the gallery of Defendant King's courtroom to watch the day's proceedings. *Id.*, ¶¶25-27, PageID.300.

> 28. The court went into recess after the proceeding and Defendant JUDGE KING's role changed from judge to teacher.

*Id.*, ¶28, PageID.300.

After Defendant King handled a homicide proceeding, he recessed court and left the bench to speak with the youths about careers in the law. *Id.*, ¶29, PageID.300. One of the students spoke up to say he was interested in becoming a judge, so Defendant King gave him his judicial robe and had him sit at the bench. *Id.*, ¶30, PageID.300. Defendant King then proceeded to lecture the students about his experiences as a practicing attorney. *Ibid.* Although court was no longer in session, the lecture was broadcast publicly on the court's YouTube livestream platform. *Id.*, ¶31, PageID.300-301. As Defendant King lectured, ELG fell asleep briefly. *Id.*, ¶32, PageID.301. Defendant King noticed and "berated" her, comparing her to a juvenile delinquent. *Id.*, ¶33, PageID.301. ELG apologized and Defendant King moved on for a time, but ELG soon dozed off again. *Id.*, ¶34, PageID.301. Defendant King instructed ELG to go to the restroom (because of what he had in store for her) and get a drink of water. *Id.*, ¶¶35-36, PageID.302. It

was during this time, Plaintiff alleges, that Defendant King formed a plan to use "Scared Straight" tactics on her:

> 37. It is apparent that he developed a plan for the amusement of his followers and fan base to cast Ms. ELG, unwittingly, in what he later described as his own episode of "Scared Straight."

*Id.*, ¶37, PageID.302.

When ELG returned to the courtroom, court officer Keith Taylor "derided" her for "disrespecting" Defendant King. *Id.*, ¶¶38-39, PageID.302. He directed ELG to the side of the bench and ordered her to stand still while a real defendant was escorted into the courtroom from a detention cell. *Id.*, ¶40, PageID.302. Taylor then placed ELG into the detention cell and locked her inside while Defendant King brought court back into session to hear another case. *Id.*, ¶41, PageID.302. Ten minutes later, court officer Cathy R. Greer-Forte, who is employed by Defendant Universal Protection Services, opened the cell where ELG was waiting and instructed her to remove her clothing and put on a jail jumpsuit. *Id.*, ¶42, PageID.303. ELG remained in her cell for "hours" while Defendant King heard cases in the courtroom. *Id.*, ¶44, PageID.303.

After the day's proceedings had ended, Greer-Forte brought ELG back into the courtroom where ELG became "the defendant" in a "mock trial" led by Defendant King. *Id.*, ¶44, PageID.303. Although the "proceedings" continued to be streamed on YouTube, there was no official case number or court record. *Id.*,

¶¶45-46. During the "trial," Defendant King made ELG disclose her name and age. *Id.*, ¶49, PageID.304. Defendant King commandeered a real private attorney serve as her "counsel." *Id.*, ¶48, PageID.304. Defendant King also threatened to send ELG to "juvey" and relayed stories about poor conditions at the Wayne County juvenile detention center.

> 50. Defendant JUDGE KING then threatened to send Ms. ELG to "juvey," with vulgar stories of beatings and feces at the county's juvenile detention center, falsely casting her as a dishonest, disrespectful delinquent and simultaneously publicly disparaging the conditions of a county-operated facility where judges with appropriate jurisdiction and proper findings of fact, having been determined with due process of law, are required to send juvenile offenders.

*Id.*, ¶50, PageID.304.

At the conclusion of the "trial," Defendant King asked ELG's peers to serve as a mock jury and decide whether she should go to the juvenile detention facility. *Id.*, ¶51, PageID.304-305. There is no allegation that ELG ever was "convicted" or "sentenced." However, Plaintiff alleges that Defendant King spoke with the media about the event and stated that it was his version of a "Scared Straight" program and because ELG was disrespectful and required his "mentorship."

> 52. Of course, Defendant JUDGE KING was not going to send Ms. ELG to jail as there was no actual case or controversy and because he admitted to the press that the foregoing was simply his version of "Scared Straight," as he was going to teach this teen a lesson for disrespecting him.

*Id.*, ¶¶52-53, PageID.305.

Plaintiff also avers that Defendant King "acknowledged" that he lacked jurisdiction to hold her in contempt. *Id.*, ¶53, PageID.305.

Plaintiff specifically pled that Defendant King was trying to teach ELG "a lesson:"

> 55. As a result of his anger, the defendant [King] immaturely decided to teach the girl a lesson in front of her peers and his internet audience.

*Id.*, ¶55, PageID.306.

## C. Material proceedings.

ELG, through her mother, filed this lawsuit on August 21, 2024. R.E.1, Complaint, PageID.1-56. Plaintiff's First Amended Complaint contains five claims against Defendant King:

1. malicious prosecution and unlawful arrest in violation of the Fourth Amendment via 42 U.S.C. §1983 (Counts I and II, R.E.30, PageID.318-326);

2. intentional infliction of emotional distress (Count III, PageID.326-328);

3. invasion of privacy (Count IV, PageID.328-332); and

4. false arrest and imprisonment (Count V) under Michigan common law. (PageID.333-336).

Plaintiff alleged unlawful seizure in violation of the Fourth Amendment via §1983 (Count VI, PageID.336-340) and false arrest under state law (Count VII, PageID.340-343) against Defendants Taylor and Greer-Forte. Plaintiff also

included a count entitled "vicarious liability" against Universal Protection Services, Ms. Greer-Forte's employer (Count VIII, PageID.343-344).

On October 21, 2024, Defendant King filed his Motion to Dismiss in Lieu of Answer pursuant to Fed.R.Civ.P. 12(b)(6). R.E.17, Motion to Dismiss, PageID.136-150.[2] The motions were directed at the original complaint, but the parties agreed that that they would be considered as addressing the later-filed amended complaint. No exhibits were attached to the Motion.

On November 11, 2024, Plaintiff filed her Response to Defendant King's Motion to Dismiss. R.E.25, Response, PageID.222-255. Similarly, no exhibits were attached to the Response. Defendant King did not file a Reply in support of his motion.

On December 30, 2024, Plaintiff filed her FAC with Jury Demand. R.E.30, Amended Complaint, PageID.293-346.

The trial court had entered an earlier order requiring an answer or response to the complaint, dated October 9, 2024 (R.E.14, Order, PageID.108), followed by a similar order of October 24, 2024. R.E.19, Order, PageID.152. Defendant King filed his Answer to the Complaint, together with Affirmative Defenses and Reliance Upon Jury Demand, dated November 14, 2024. R.E.27, Answer,

---

[2] Greer-Forte and Universal Protection Services also filed motions to dismiss the case on immunity grounds. R.E.11, Motion, PageID.76-91; R.E.17, Motion, PageID.136-150.

PageID.261-278.  Plaintiff filed her Reply to Defendant King's Answer and Affirmative Defenses, dated November 27, 2024.  R.E.28, Reply, PageID.279-282.

On February 19, 2025, the trial court held its in-person proceedings on Defendant King's Motion to Dismiss, reflected in the transcript of the same date. R.E.56, Tr, PageID.600-635.  The trial court took the motion under advisement. *Id.*, PageID.634-635.

On May 22, 2025, the trial court issued its Opinion and Order denying the Motions to Dismiss by Defendants King and Greer-Forte. R.E.51, PageID.576-594.

On June 18, 2025, King filed his Notice of Appeal. R.E.52, Notice of Appeal, PageID.595.  While that Notice was pending and before the filing of Plaintiff's Notice of Appeal, the latter dated July 1, 2025 (R.E.62, PageID.655-676), the trial court had entered its Motion to Substitute Plaintiff and Amend Caption through an Order of June 26, 2025.  R.E.61, Order, PageID.653-654.[3] Plaintiff's Notice of Appeal was timely filed on July 1, 2025 (R.E.62, Notice of Appeal, PageID.655-676).

---

[3] The substitution of the party Plaintiff was necessary because this case was initially filed by ELG's mother, Latoreya Till, as "Next Friend" of ELG, but Ms. Till was later appointed as Conservator for ELG's estate by the Macomb County Probate Court.  R.E.61, PageID.653.  Thus, the "amendment to the caption [is] to reflect the legal arrangement adopted to protect minor ELG's interests." *Id.*, PageID.654.

**D. The district court's decision.**

    1. **Defendant King's actions were non-judicial in nature and in function (appeal).**

In its Opinion and Order, the district court ruled that the allegations in the FAC were sufficient to distant Defendant King's actions from the judicial functions that the immunity doctrine insulates from liability. R.E.51, Opinion and Order, PageID.588-590. The district court found that the allegations in Plaintiff's FAC "present a close case," described as follows:

> Her pleading paints a picture of a judge who felt disrespected while he was lecturing students, albeit within the walls of his courtroom, and wished to teach the plaintiff a lesson misusing the machinery of his court.

*Id.*, PageID.587. The district court continued:

> [T]he amended complaint includes facts that permit a different conclusion: that Judge King was retaliating against an adolescent who had the temerity to doze during his recounting of his career, using his courtroom as a prop for his own devices.

*Id.*, PageID.587-588. Citing to various paragraphs of the FAC, the district court continued that Plaintiff alleged that Defendant King instituted fake proceedings while the court was not in session, beyond his power to do, and that from a functional perspective, Defendant King acted as a teacher or lecturer and not a judge, such that Defendant King did not intend to engage ELG in his official capacity, but as a participant in a "Scared Straight" program broadcast to the public over the internet. *Id.*, PageID.588. The district court continued that Plaintiff

alleged that she encountered Defendant King as "sort of a teacher, not as a judge," *Id.*, and that her offending act – nodding off in the gallery – "occurred after Judge King had left the bench, given his judicial robe to one of her peers, and was discussing his legal practice." *Id.* The district court further acknowledged Plaintiff's argument that Defendant King would not be entitled to immunity had he taken the same acts while teaching lawsuits or serving as a keynote speaker at a public event, *Id.*, and accordingly the allegations are "sufficient to distance Judge King's actions from the judicial functions that the immunity doctrine insulate from liability." *Id.* The district court concluded:

> But the allegations in the amended complaint also permit the inference that Judge King was not defending the judicial branch or preserving courtroom decorum, but instead was striking out at a fifteen-year-old who insulted his lecturing prowess by dozing during his delivery.

*Id.*, PageID.589.

## 2. Defendant King did not act in complete absence of jurisdiction (cross-appeal).

While concluding that the FAC included facts establishing that Defendant King was not performing a judicial act when he acted abusively towards ELG, *Id.*, PageID.585, the district court rejected Plaintiff's position that her FAC demonstrated that Defendant King was not entitled to immunity because he acted in complete absence of jurisdiction by orchestrating his "Scared Straight" program. *Id.*, PageID.583. Reasoning that "*if* what he [Defendant King] was doing was

maintaining courtroom decorum," *Id.* (emphasis supplied), PageID.584, Plaintiff faced "a formidable chore to establish that Judge King acted in the 'clear absence of jurisdiction.'" The district court rejected Plaintiff's argument that Michigan's contempt statute, M.C.L. 600.1701, constrained Defendant King's jurisdiction to conduct contempt proceedings "only when the court was 'sitting,'" finding that such an argument suggested that Defendant King acted in "excess of his jurisdiction by conducting the 'mock trial' when court was not formally 'sitting,' which is not sufficient to overcome an immunity defense." *Id.*, PageID.584.

**STANDARD OF REVIEW**

This Court reviews de novo a district court's decision on a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *Williams v. U.S. Att'y. Gen.*, 932 F.3d 819, 822 (6th Cir. 2020). To avoid dismissal, "a complaint must contain sufficient factual matter, accepting as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The availability of judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law. As such, the Court's review of the district court's denial of the motion is de novo. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). As the proponent of the claim of absolute judicial immunity, Defendant King bears the burden of establishing that such immunity is warranted. *Id.*, citing *Antoine v. Byers & Anderson*, 508 U.S. 429, 432 (1993).

The district court correctly determined that absolute judicial immunity does not apply to the factual allegations of Plaintiff's First Amended Complaint. Such allegations describe Defendant King's actions as non-judicial in nature and in function. Defendant King was not acting as a judge because he was teaching and lecturing to the students, merely using the courtroom as a lecture forum. The district court correctly reasoned that the judicial function does not include teaching, much less disciplining students who appear before a judge in a didactic relationship. R.E.51, PageID.589. Additionally, Defendant King's actions were not those normally performed by a judge. The parties did not deal with Defendant King in his judicial capacity, and the factual allegations are properly classified as Defendant King acting for his own personal motivation. In short, the factual allegations demonstrate Defendant King's acts were neither of the nature or the function of a judge.

On cross-appeal, the district court erred in rejecting the argument that Defendant King's actions were taken in the complete absence of the scope of his jurisdiction. ELG was not a party, a witness, a juror, was not dealing with the judge in his judicial capacity, and the mock trial and related activities lacked all indicia of judicial process. The complete absence of jurisdiction exception to judicial immunity is not limited to when a judge invades a judicial area in which he

has no jurisdiction (such as a civil judge acting in a probate type matter). Instead, the complete absence of jurisdiction applies when a judge acts outside of his or her assigned jurisdiction altogether.

**ARGUMENT I**

**THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF'S FIRST AMENDED COMPLAINT INCLUDES FACTUAL ALLEGATIONS WHICH ESTABLISH THAT DEFENDANT KING WAS NOT PERFORMING A JUDICIAL ACT WHEN HE ACTED ABUSIVELY TOWARD ELG, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE.**

**A. Introduction.**

The district court properly determined that the factual allegations present extrajudicial conduct, as gauged by the nature and functions of the acts described in the first amended complaint. Plaintiff alleged that Defendant King was hosting a field trip and giving a lecture at the time he detained ELG, and that his actions were part of a bigger broadcast, "Scared Straight." Case law does not provide for judicial immunity when a judge is giving a lecture to the public because this does not involve deciding disputes between litigants. It is not the location that matters for determining an exception to judicial immunity, but rather the nature and function of the acts. Ample case law establishes that comments made to the press, analogized to the use of the live feed here by Defendant King, are extrajudicial in nature. A lecture is not part of a judicial function.

Additionally, the parties were dealing with Defendant King in a non-official capacity (not as a party, not involved in any case, court was not in session, a mock trial does not constitute a case or controversy, no record kept, no orders entered, and importantly, no contempt proceeding). The district court properly determined

that Defendant King had personal motivation for his acts with respect to ELG, which by definition are non-judicial in nature.

Plaintiff's factual allegations and all reasonable inferences taken therefrom establish that Defendant King was not performing a judicial function, but instead engaged in extrajudicial conduct, including personal retaliation against ELG, a student, during a lecture given by Defendant King, culminating in extrajudicial punishment, performed while the court was not in session, and involving a person – ELG – who was not a litigant. Defendant King's position on the merits fails miserably and should be rejected by this Court.

Defendant King's appellate presentation is fatally insufficient. Using the exact same arguments in his Motion to Dismiss, word for word, sentence for sentence (but for two stray sentences found at Appellate Brief, Doc 31, p. 15),[4] and providing this Court with no discussion whatsoever of the district court's decision, Defendant King makes a series of assertions ranging from who has the burden with respect to judicial immunity, through whether Defendant King was sued in his official or individual capacity, in apparent hopes of derailing the district court's determination that Plaintiff's allegations establish Defendant King took non-judicial action insulated from judicial immunity. Ignoring altogether the rules

---

[4] *Compare* Doc 31, Appellate Brief, pp. 13-17 *with* R.E.17, Motion to Dismiss, PageID.145-149.

governing a 12(b)(6) motion and the importance of the factual allegations in the subject FAC, Defendant King fails to cite, let alone discuss, a ***single*** factual allegation in Plaintiff's FAC.

**B. The law of judicial immunity.**

Since its recognition in modern common law, "[j]udicial immunity" has been characterized as "absolute immunity" from civil liability for the actions of judges undertaken "whilst exercising their judicial functions" within their judicial authority. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354 (1871).

A good history of judicial immunity was articulated by the Eighth Circuit in *Rockett v. Eighmy*, 71 F.4th 665, 668-670 (8th Cir. 2023). It was stated that "a judge cannot be liable for what 'a Judge doth as Judge.'" *Id*. at 669 (quoting *Floyd v. Barker*, 77 Eng. Rep. 1305, 1307 (Star Chamber 1607)). The opposite was also true – a judge would not be immune when the person acted without the power and authority of judge. *Rockett,* 71 F.4th at 668-670.

The purpose of the English doctrine was "to insulate common-law judges on the King's courts from their rivals on other courts." *Id.* The rationale for judicial immunity waned in the American colonies, such that the purpose of judicial immunity shifted from protecting one court from the actions of another, to "protecting judicial independence: allowing judges 'to act upon [their] own convictions, without apprehension of personal consequences.'" *Id.*

16

It is a judge's duty to decide all cases within [the court's] jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. [The judge's] errors may be corrected on appeal, but [the judge] should not have to fear that unsatisfied litigants may hound [the court] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation.

*Pierson v. Ray*, 386 U.S. 547, 554 (1967).

The earliest American cases addressing judicial immunity contemplated that the protection was limited to the adjudicative process of decision-making. In other words, when there was an actual case or controversy involving litigants properly before the court, a judge could not be sued for making a ruling. The litigant's remedy for dissatisfaction with a decision is the litigant's appellate right. Thus, the common elements to the application of judicial immunity have historically been: (1) a case or controversy with appellate rights; (2) parties to the lawsuit; and (3) a decision by the judge – a judicial act.

In considering "judicial acts," the Supreme Court has discussed the distinction between "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter:"

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.

*Bradley,* 80 U.S. (Wall.) at 351-352. Applying its rationale to the facts of the case before it, the *Bradley* Court held, "[a]nd the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is ***jurisdiction of both subject and person***, applies in cases of this kind, and for the same reasons." *Id.* at 352 (emphasis supplied). Immunity applies only if the judge has subject matter jurisdiction and personal jurisdiction, which depends upon whether the plaintiff sought out the judge in an official capacity.

Next, the Court held in *Stump v. Sparkman*, 435 U.S. 349, 355-356 (1978), that judicial immunity applies to actions taken by judges within their jurisdiction. Despite the tragic result, the *Stump* Court held that nothing prevented an Indiana court of general jurisdiction from considering a petition for sterilization of their daughter brought by the parents of a minor. *Id.* at 358-360. The *Stump* judge had both personal and subject matter jurisdiction despite the existence of procedural irregularities. *See Id.* at 359.

The procedural deficiencies – no docket number, no notice to the minor, no hearing, and no guardian ad litem – did not expose the judge to personal liability because the judge "took cognizance" of his actions. *Stump,* 435 U.S. at 360-361. The judge signed the petition. Taking cognizance means making the action official by, for example, signing an order. Also important is whether "the confrontation

arose directly and immediately out of a visit to the judge in his official capacity." *Id.* at 361.

Considering the cases it cited, the *Stump* Court identified several factors in determining whether an act by a judge is a judicial one: (1) the nature of the act itself, i.e., whether it is a function normally performed by a judge; and (2) the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. *Stump,* 435 U.S. at 362.

Next, in *Forrester v. White*, 484 U.S. 219 (1988), the Supreme Court held that a judge is not immune from suit for administrative actions (hiring and firing), elaborating upon the functional analysis, noting that "[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review [appeal], which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester,* 484 U.S. at 227. Thus, immunity is afforded to adjudicative functions, in part, because the disgruntled litigant has appellate rights independent of filing a civil lawsuit.

After previously noting that it was not writing on a clean slate when applying the doctrine of judicial immunity, the *Forrester* Court added that the "Court ha[d] never undertaken to articulate a precise and general definition of the class of acts entitled to immunity," *Id.*, explaining:

> Difficulties have arisen primarily in attempting to draw the line
> between truly judicial acts, for which immunity is appropriate, and

***acts that simply happen to have been done by judges***.  Here, as in other contexts, immunity is defined by the *functions* it protects and serves, not by the person to whom it attaches.

484 U.S. at 227 (emphasis supplied).

The *Forrester* Court recognized the obvious:  an act is not a judicial act just because a judge says it is.  Furthermore, the Court held that hiring and firing decisions, " – like many others involved in supervising court employees, and overseeing the efficient operation of a court – may have been quite important in providing the necessary conditions of a sound adjudicative system.  The decisions at issue, were not themselves judicial or adjudicative." *Id.* at 229.  Merely because the decisions were made in a physical courthouse, did not transform administrative functions into judicial functions.  Like title does not determine the function, the location of the act does not determine the function.

From these earlier cases (and several others), in *Mireles v. Waco*, 502 U.S. 9 (1991), the Supreme Court articulated the basic inquiry that must be made in assessing whether judicial immunity applies:

Our cases make clear that the immunity is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.… Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

502 U.S. at 11-12 (citations omitted). The *Mireles* Court clarified that it is the nature and function of the act that must be considered in deciding whether it was a judicial act. *Id.* at 13.

The functional analysis was further explained in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (applying the functional analysis to claims of absolute prosecutorial immunity). The *Buckley* Court held that the timing of the action is important. In that regard, a prosecutor did not enjoy absolute immunity from investigatory actions undertaken by the prosecutor before probable cause for arrest was established because the prosecutor was acting no differently than a detective before charges were brought. *Id.* at 273-274:

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'
>
> ***
>
> Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.'
>
> ***
>
> A prosecutor neither is, nor should consider himself to be, an advocate [protected by absolute immunity] before he has probable cause to have anyone arrested.

*Id.*

The *Buckley* Court similarly found that the same prosecutor was not immune from civil liability for comments made to the media because comments made to the media "have no functional tie to the judicial process just because they are made by a prosecutor." *Id.* at 277. As explained by the Court:

> The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions.

*Id.* at 278.

**C. Argument.**

**1. Defendant King has forfeited his argument on appeal.**

It is axiomatic that it is always the appellant's burden to demonstrate error. Merely restating the argument below without reference to the district court's decision, let alone demonstrating how that reasoning is erroneous, constitutes forfeiture. Examination of Defendant King's Appellate Brief reveals: (1) no citation to let alone examination of the factual allegations of Plaintiff's amended complaint, notwithstanding that the motion to dismiss was filed under Fed.R.Civ.P. 12(b)(6); (2) no discussion of the district court's Opinion and Order, notwithstanding that it constitutes the decision appealed from and from which Defendant King must establish error; and (3) an appellate brief that simply recasts the district court motion to dismiss, which was filed before and thus by definition

not in response to the district court's Opinion and Order.[5]  Not only is his Appellate

Brief woefully deficient under Fed.R.App.P. 28(a) (especially subsection (6)),[6]

Defendant King does not specifically identify the error claimed from the district

court's Opinion and Order, does not discuss why the rationale used by the district

court to reach that decision is erroneous.  These omissions constitute an insufficient

presentation to this Court.  "Scant treatment" of an argument is such that a

defendant forfeits the argument.  *Ashford v. Univ. of Mich.*, 89 F.4th 960, 975 (6th

Cir. 2024) ("scant treatment" of the clearly established prong of qualified

immunity is such that the defendants "forfeited the argument that our precedent

had not clearly established" the plaintiffs' constitutional rights).  To the extent an

argument is actually presented, it is forfeited when there is insufficient

presentation.  *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

---

[5] Plaintiff presumes that the only reason Defendant King's Appellate Brief was accepted is that the clerk became exacerbated with the multiple failed attempts by Defendant King to file a conforming brief, and simply allowed this latest brief to be accepted.  *See* Doc 26, Court's 1/13/26 letter regarding corrections needed to King's Brief filed on 1/12/26; Doc 27-2, Order of 1/21/26 as a result of the failure to file a corrected Brief; and Doc 30, Court's 1/22/26 letter regarding corrections needed to King's Brief filed on 1/22/26.

[6] The appellant's brief must contain under the appropriate headings and in the following order indicated:  (6) "a concise statement of the case setting forth the facts relevant to the issues submitted for review, describing the procedural history, and identifying the rulings presented for review *with appropriate references to the record*."  (Emphasis supplied).

It is particularly fatal to Defendant King's presentation that he does not discuss the factual allegations of Plaintiff's first amended complaint, allegations which must be accepted as true, together with all reasonable inferences drawn therefrom. Absent such deference, it is doubtful if this Court even has appellate jurisdiction over an immunity appeal from the denial of a motion to dismiss.

### 2. Defendant King carries the burden of establishing judicial immunity.

Defendant King incorrectly asserts "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity," quoted from *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). In applying the functional analysis, necessary to determine whether a person is entitled to absolute immunity, "[the] decisions have … emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 690-691 (6th Cir. 2020). *See also Archie v. Lanier*, 95 F.3d 438, 441 (6th Cir. 1996) (burden on judge to show that the actions the plaintiff challenges justify the invocation of judicial immunity).

### 3. Plaintiff did – but was not required to – plead the absence of absolute immunity.

Because the person asserting absolute immunity bears the burden of proving that such immunity is justified for the function in question, it is akin to an

affirmative defense. *See Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (labeling "qualified immunity" as an "affirmative defense," though immunity is described as an *immunity from suit* rather than a mere defense to liability). When the defendant has the burden of proving an affirmative defense, the plaintiff is not required to specially plead facts that negate the defense. *See Archie,* 95 F.3d at 440-441 (denial of judge's 12(b)(6) motion on the basis of judicial immunity was appropriate where the defendant asserted that he was entitled to judicial immunity).

By analogy, the Supreme Court has held that the "failure to exhaust" requirement of the Prison Litigation Reform Act of 1996 (PRLA), 42 U.S.C. §1997e, is an affirmative defense, for which the defendant bears the burden of proof. *See e.g. Jones v. Brock*, 549 U.S. 199, 216 (2007); *Franklin American Mtg. Co. v. University Nat'l Bank*, 910 F.3d 270, 284 (6th Cir. 2018) (party asserting affirmative defense bears the burden of proving the defense). As a proposition for which the defendant bears the burden of proof, plaintiffs are not required to specially plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 216. It follows that a plaintiff is not required to plead the lack of judicial immunity to state a valid claim in her complaint.

Defendant King does not challenge Plaintiff's factual support for the ***claims that she made***. Rather, Defendant King alleges facts that he contends support his anticipated ***defense***. Therefore, Plaintiff has stated proper claims and, at best,

Defendant King has alleged an affirmative defense. There was no basis for dismissal on the pleadings in these circumstances. Plaintiff requests that Defendant's appeal of the denial of his 12(b)(6) motion be rejected.

### 4. Plaintiff has sued Defendant King in his individual capacity.

Defendant King continues to incorrectly claims that Plaintiff has sued him in his official capacity, from which he argues that "[f]ederal common law has long afforded judges absolute immunity from suits for money damages arising out of actions taken in a judge's official capacity" citing *Hughes v. Duncan*, 93 F.4th 374, 378 (6th Cir. 2024)." R.E.17, Motion, PageID.145; Appellate Brief, Doc 31, p. 9. Plaintiff does not disagree with the general proposition stated in Defendant's brief. However, Plaintiff has sued Defendant King in his individual capacity for the personal wrongs that he committed against ELG under color of law. *See* R.E.30, FAC, caption, PageID.293. Plaintiff's amended complaint alleges that Defendant King was not performing the function of a judge when he violated ELG's rights (*Id.*, ¶¶76, 109, 112, 114, PageID.309, 316-317), meaning he was not acting in his official capacity as a judge.

Defendant King confuses the concept "under color of law" with the phrase "official capacity."

> It is important to note at the outset that a §1983 *individual*-capacity claim differs from a §1983 *official*-capacity claim. . . . An official-capacity claim against a person is essentially a claim against the municipality [or other arm of government]. . . . On the other hand, an

individual-capacity claim seeks to hold an official personally liable for the wrong alleged. . . . "On the merits, to establish *personal* liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]"

*Peatross v. City of Memphis, Tenn.*, 818 F.3d 233, 241 (6th Cir. 2016) (citations omitted, emphasis in original).

"Under color of law" means "under pretense of law." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001). Plaintiff alleges that Defendant King was not performing the function of a judge when he deprived ELG of her federal rights; however, he used the authority of his title to accomplish the deprivation. In other words, he made ELG believe that the process that he concocted was genuine. *See* previous citations.

Thus, Defendant King's assertion that Plaintiff's complaint must be dismissed because he is being sued in his official capacity is erroneous. Appellate Brief, Doc 31, p. 9. "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir.1993). *See also Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

Plaintiff has sued Defendant King individually. It was and remains his burden to prove that he was functioning in a judicial capacity when the acts alleged in Plaintiff's complaint occurred. Plaintiff has properly pled that he was not.

**5. Plaintiff has alleged factual allegations that under the nature and function of the act test, Defendant King was not performing a judicial function, but rather was engaged in extrajudicial conduct.**

Plaintiff has alleged, with ample factual support, that this cause of action arises out of Defendant King's actions as lecturer as opposed to judge. R.E.30, ¶¶19-21, 28, 76, PageID.299, 300, 309. Like public remarks to the media were not a prosecutorial function in *Buckley,* 509 U.S. at 278, a lecture to students broadcast on social media is not a judicial function.

Under the functional approach which governs judicial immunity, the Court considers whether the action is one "normally performed by a judge" as well as "the expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362; *see also King v. McCree*, 573 F.App'x. 430, 438 (6th Cir. 2014). Plaintiff's allegations establish that Defendant King was not acting in an adjudicative capacity, but rather his role was one of a teacher and a lecturer using the courtroom as a lecture forum. The district court correctly concluded that the judicial function "does not include teaching, much less disciplining students who appear before a judge in a didactic relationship." R.E.51, PageID.589. Nor under the functional approach is it possible to categorize Defendant King's actions as those "normally performed by a judge." To state the obvious, judges do not normally force non-litigant minors into prison jumpsuits for the "offense" of dozing off during a field trip. Nor do judges normally

commandeer a private attorney for a sham trial in a mock court proceeding. Additionally, ELG did not deal with Defendant King in his judicial capacity. She did not have a case before him. She did not seek out his advice or determination for a legal ruling. She had no connection to ongoing or even potential litigation. Instead, she simply appeared in his courtroom on a field trip tour.

Finally, it is alleged that Defendant King's motivation was personal in nature. The district court found specifically – and correctly so – that Defendant King was offended by a 15-year-old who, in his opinion, "insulted his lecturing prowess," separate and distinct from preserving the integrity of the judicial system. R.E.51, PageID.589.

While a mock trial might look like a contempt proceeding, Plaintiff has alleged that ELG was an unwilling participant in a fake trial. R.E.30, ¶44, PageID.303. Though cases have held that the informality of a proceeding does not preclude the conclusion that it was a court proceeding, where the court took cognizance of its actions in the form of an order, *Stump*, 435 U.S. at 361, in this matter, the court did not take cognizance of its actions. The matter was not given a case number. *Id.*, ¶45, PageID.303. There is no official record of the proceeding because court was not in session. *Id.*, ¶¶46, 78, PageID.303, 309. Furthermore, Defendant King told the press that the mock trial was his version of "Scared Straight." *Id.*, ¶¶37, 52-53, PageID.302, 305. Consequently, a person reviewing

the public record will not find an order of the court or any acknowledgement of the presence of ELG within the jurisdiction of the 36th District Court.

There is no record of ELG because she did not engage Defendant King in his official capacity. *Id.*, ¶77, Page.ID.309. Similarly, Defendant King did not intend to engage ELG in an official capacity; rather, he intended to orchestrate his own version of "Scared Straight" that he produced and broadcast to the public. *Id.*, ¶¶53, 91, 93, PageID.305, 312-313.

Plaintiff has properly alleged that Defendant King was not performing a judicial function when he caused ELG to be humiliated, unlawfully arrested, and unlawfully detained. ELG did not engage Defendant King in his official capacity. The matters at issue did not occur while court was in session. Lectures and mock trials are not judicial functions. Defendant King intended to produce his own version of "Scared Straight." He was personally motivated. Defendant King cannot successfully assert immunity where he was not engaged in judicial decision-making and remains subject to civil liability.

This Court has held that when a judge steps out of the judicial role, such as speaking to the media, the judge's actions do not satisfy the functional approach as those normally performed by a judge. In *Barrett v. Harrington*, 130 F.3d 246, 261 (6th Cir. 1997), this Court reasoned that when a judge spoke to the media about an actual litigant, that action fell outside of a judicial capacity, as it was not one

normally performed by a judge.  This Court reasoned that where a judge engages in interviews with the media, accusing a former litigant who had appeared before her of stalking, the separate media communications were outside of the judicial function because they "further[ed] no official act or sanction."  *Id.* at 261.  *See also Harris v. Harvey*, 605 F.2d 330 (6th Cir. 1979) (judge was not entitled to judicial immunity for extrajudicial communication to the press and city officials wherein he described the plaintiff as a fixer, a briber, and a sycophant).

It is no answer that Defendant King was essentially conducting contempt proceedings.  He was not.  His actions fall far outside "judicial acts" as best described in *Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir. 1981), a case involving the improper use of contempt proceedings:

> [W]e hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."

*Id*.

Finally, barring this action would not promote the goal of judicial independence; rather, it would encourage extrajudicial misconduct.

**D. Conclusion.**

"Anytime an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one."  *Cameron v. Seitz*, 38 F.3d 264, 271

(6th Cir. 1994), citing *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989). Here, Plaintiff specifically alleged acts which do not constitute the performance of a judicial function. They include a field trip and lecture, versus a court session, the judge removing his robe, leaving the bench, placing the robe on another student, the plan by the judge to broadcast the "proceedings" under "Scared Straight," the fact that ELG was not in the courtroom for any legal purpose, that there was no party, no case involving ELG, no record, no order (such that there can be even an analogy to a contempt proceeding), and perhaps most importantly, a personal motivation factor, reflected by Defendant King's version of "Scared Straight." The trial court's decision is proper and does not remotely reflect error (indeed, Defendant King does not even earmark the specific error required to be established on appeal), and should be affirmed.

## ARGUMENT II

**THE DISTRICT COURT ERRED WHEN REJECTING PLAINTIFF'S ARGUMENT that THERE IS A "COMPLETE ABSENCE OF ALL JURISDICTION" OVER PLAINTIFF'S FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT, FOR WHICH JUDICIAL IMMUNITY IS INAPPLICABLE.**

Absolute judicial immunity does not apply when the judge's "actions, though judicial in nature, [are] taken in the complete absence of all jurisdiction[.]" *Mireles, supra*, 502 U.S. at 12. "[T]he scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ." *Stump, supra*, 435 U.S. at 356.

Here, the district court determined that Defendant King's actions were merely in "excess of jurisdiction" rather than in the "complete absence of all jurisdiction." R.E.51, PageID.583-584. The basis for this ruling, however, is Defendant King's position that he enjoyed the authority, found to be "the jurisdiction," to enforce courtroom decorum and to hold in contempt those who disrupt the administration of court proceedings, or impugn the respect due to the court. *Id.*, PageID.584. Accepting Defendant King's view of the factual allegations, rather than viewing most favorably the factual allegations to Plaintiff, the district court then conditioned its rulings on Defendant King's representation that he was enforcing courtroom decorum. "***If that is what he was doing***, he is on

firm ground." *Id.*, PageID.584. "ELG faces a formidable chore to establish that Judge King acted in the 'clear absence of jurisdiction,' ***if what he was doing was maintaining courtroom decorum***." *Id.* "Judge King's attempt to maintain an orderly courtroom – even if procedural irregular and substantively deficient – would not be in the clear absence of his jurisdiction, ***if in fact that was the nature of his actions***." *Id.*, PageID.585 (emphasis supplied for all three excerpts).

The conditional nature of the district court finding is insightful and demonstrates error. Many if not most of the allegations found in Plaintiff's first amended complaint do not deal with Defendant King enforcing decorum in his courtroom. Nor do they deal with disrupting the administration of court proceedings (there were no court proceedings in effect at the time of the offending acts, and obviously ELG was not a litigant nor before the court as a party associated with any litigation). Indeed, it is alleged that Defendant King admitted to his lack of jurisdiction over the matter, as best exemplified in ¶¶52-53 of the FAC:

> 52. Of course, Defendant JUDGE KING was not going to send Ms. ELG to jail as there was no actual case or controversy and because he admitted to the press that the foregoing was simply his version of "Scared Straight," as he was going to teach this teen a lesson for disrespecting him.

> 53. Rather than using the press as an opportunity to extend an apology for what many have labeled as extreme and outrageous conduct on the judge's part, Defendant JUDGE KING doubled down by telling reporters that Ms. ELG had a bad attitude, was

disrespectful; and required his mentorship, while simultaneously offering a watered-down acknowledgement that he lacked jurisdiction to hold Ms. ELG in contempt, knowing that the conduct that disturbed him occurred during a lecture where he served not as judge, but as teacher, in a venue that he had transformed from courtroom to classroom, telling the public that he probably did not have the authority to jail her.

R.E.30, FAC, PageID.305. Under the governing allegations, Defendant King's own admission that he was operating outside his legal authority is the best indicator that he was acting in the "clear absence of all jurisdiction." *See Bradley v. Fisher, supra*; *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997) (a judge acts in the clear absence of all jurisdiction when the matter is clearly outside the subject matter of the court over which he presides).

Defendant King cannot legitimately assert that the mock trial that was held somehow falls within the jurisdiction of the court. That trial had no official case number or court record, Defendant King had commandeered a private attorney to perform the ostensible representation of ELG, and in fact the "proceeding" was sham in all regards.

Defendant King argues that judges normally preside over contempt proceedings. That does not establish jurisdiction. Defendant King lacked jurisdiction over ELG because she was not a party to a case or controversy with appellate rights. This case goes far beyond even improper use of contempt proceedings. *Harper v Merckle, supra*. The defense fails to recognize that there

must be jurisdiction over the person before considering the nature of the proceeding. Defendant King lacked all jurisdiction over ELG. She was not a party to a case or controversy. R.E.30, ¶52, PageID.305. She had no appellate rights in a mock trial. In Michigan, a court has jurisdiction to hold a spectator in contempt for "[d]isorderly contemptuous, or insolent behavior, ***committed during its sitting***, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority." M.C.L. 600.1701(a) (emphasis supplied). R.E.30, ¶74, PageID.309.

The district court's contempt reasoning is apparently derived from Michigan's contempt statute, M.C.L. 600.1701 which provides, in part:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:
>
> (a) Disorderly, contemptuous, or insolent behavior, ***committed during its sitting***, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

(Emphasis supplied). *See also* the provision for summary punishment for contempt, M.C.L. 600.1711(1).[7] Here, contempt was not in order because Defendant King was not sitting as a judge during the events in question. Plaintiff

---

[7] "(1) When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both."

does not suggest that the phrase "the sitting of the court" needs to be strictly limited to the period of a court's gavel-to-gavel functioning. *See e.g., In Re: Contempt of Warriner*, 113 Mich. App. 549, 553; 317 N.W.2d 681 (1982). Nor does disorderly behavior fall outside of contempt power while the judge is still in the courtroom and within his immediate view and presence. *Id.* Here, neither of those features applies. With respect to ELG's situation, there was no action "during [the court's] sitting" because there was no actual litigation before the court. The mock trial certainly does not count because there is no case in controversy involved in such a case, and there are not litigants.[8] Indeed, Defendant King acknowledged that he did not have contempt power, and he did not attempt to hold or even threaten to hold ELG with contempt, but rather he publicly humiliated her in front of a group of her peers and on an internet livestream. Most telling, it is alleged that Defendant King defended his actions by saying that those actions were his own version of "Scared Straight," which appears to be a parental-like disciplinary lesson, didactic in nature, rather than an adjudicative function.

Plaintiff has alleged that some of the events at issue occurred ***before*** court was "sitting." Instead, the events at issue occurred during a lecture that was part of

---

[8] If a contrary ruling was found, it would mean that each time a judge sits on a moot court argument at the local law school, that judge is "sitting" as that phrase is meant to be interpreted with respect to contempt in Michigan.

a field trip.  *See* R.E.30, ¶¶31, 75-76, PageID.300-301, 309.  Plaintiff has also alleged that Defendant King was personally motivated to orchestrate his own version of "Scared Straight."  Like in *Zarcone v. Perry*, 572 F.2d 52, 53 (2nd Cir. 1978), where an award of compensatory and punitive damages was appropriate in a case where the judge feigned contempt proceedings for actions that occurred while court was not in session, an award of compensatory and punitive damages is appropriate in this case where fake proceedings were instituted for actions that occurred while court was not in session. Plaintiff has appropriately alleged the lack of all personal and subject matter jurisdiction as well as facts in support of the allegation.

# CONCLUSION

Plaintiff-Appellee/Cross-Appellant Latoreya Till requests on appeal that this Court affirm the district court's decision, and on cross-appeal, reverse and vacate the district court's rejection of the complete absence of jurisdiction argument, and issue any other relief this Court deems appropriate under the circumstances.

Respectfully submitted,

Fieger, Fieger, Kenney & Harrington, P.C.

/S/ Robert G. Kamenec
Robert G. Kamenec (P35283)
Gary N. Felty, Jr. (P55554)
Attorneys for Plaintiff-Appellee/Cross-Appellant Latoreya Till, as Conservator for the Estate of ELG for the current Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555; (248) 233-3560 (f)
(313) 268-9875 (cell)
r.kamenec@fiegerlaw.com

Dated: March 3, 2026

# CERTIFICATE OF COMPLIANCE

STATE OF MICHIGAN       )
                                ) ss.

COUNTY OF OAKLAND     )

ROBERT G. KAMENEC, being first duly sworn, certifies and states the following:

1.     He is an attorney with the firm Fieger, Fieger, Kenney & Harrington, P.C., and is in principal charge of the above-captioned cause for the purpose of preparing the attached Brief on Appeal;

2.     The brief on appeal prepared by his office complies with the type-volume limitation;

3.     The firm relies on the word count of their word processing system used to prepare the brief, using Times New Roman size 14 font; and

4.     The word processing system counts the number of words in the brief as 8,829.

/s/ Robert G. Kamenec
ROBERT G. KAMENEC

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

ELG, a minor by Parent and Next Friend Latoreya Till

Plaintiff

and

LATOREYA TILL, as Conservator for the Estate of ELG for the current Plaintiff

Plaintiff-Appellee/Cross-Appellant

v.

KENNETH J. KING, Judge

Defendant-Appellant/Cross-Appellee

JOHN DOE, Court Officers; JANE ROE, Court Officer; KEITH TAYLOR

Defendants [25-1558, 25-1614]

and

UNIVERSAL PROTECTION SERVICE, LLC, dba Allied Universal Security
Services, dba Allied Universal Security Services, LLC;
CATHY R. GREER-FORTE

Defendants-Appellees [25-1614]

---

Appeal from the United States District Court
Eastern District of Michigan
Case No. 2:24-cv-12195

---

**CERTIFICATE OF SERVICE**

Robert G. Kamenec, attorney with the law firm of Fieger, Fieger, Kenney & Harrington, P.C., hereby certifies that on March 3, 2026, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the United States Court of Appeals for the Sixth Circuit and via U.S. Mail to any counsel, or *In Pro Per* parties not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. Mail.

Respectfully submitted,

Fieger, Fieger, Kenney & Harrington, P.C.

/S/ Robert G. Kamenec
Robert G. Kamenec (P35283)
Gary N. Felty, Jr. (P55554)
Attorneys for Plaintiff-Appellee/Cross-Appellant Latoreya Till, as Conservator for the Estate of ELG for the current Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555; (248) 233-3560 (f)
(313) 268-9875 (cell)
r.kamenec@fiegerlaw.com

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description | Filed Date | Record Entry No. | Page ID |
|---|---|---|---|
| Complaint | 8/21/24 | 1 | 1-56 |
| Motion to Dismiss | 9/30/24 | 11 | 76-91 |
| Order | 10/9/24 | 14 | 108 |
| King's Motion to Dismiss | 10/21/24 | 17 | 136-150 |
| Order | 10/24/24 | 19 | 152 |
| Response to King's Motion to Dismiss | 11/11/24 | 25 | 222-255 |
| King's Answer to Complaint | 11/14/24 | 27 | 261-278 |
| Reply to Answer to Complaint | 11/27/24 | 28 | 279-282 |
| First Amended Complaint | 12/20/24 | 30 | 293-346 |
| King's Answer to Amended Complaint | 1/27/25 | 35 | 447-462 |
| Reply to Amended Affirmative Defenses | 2/10/25 | 36 | 463-466 |
| Opinion and Order | 5/22/25 | 51 | 576-594 |
| Notice of Appeal [King] | 6/18/25 | 52 | 595 |
| Transcript of 2/19/25 | 6/24/25 | 56 | 600-635 |
| Order | 6/26/25 | 61 | 653-654 |
| Notice of Appeal [Till] | 7/1/25 | 62 | 655-676 |